FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 AUG -9 PM 3: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

GHELIA ALLEN,                    )
                                 )
        Plaintiff,               )
                                 )        CIVIL ACTION NO.
v.                               )
                                 )        95-AR-1909-S
TYSON FOODS, INC., et al.,       )
                                 )
        Defendants.              )

**ENTERED**

**AUG - 9 1999**

**MEMORANDUM OPINION**

Presently before the court are motions for summary judgment filed
by defendants Tyson Foods, Inc. ("Tyson") and Trivis Wood ("Wood").
Defendants seek judgment as a matter of law on all claims asserted
against them by plaintiff, Ghelia Allen ("Allen").  Specifically, Tyson
seeks summary judgment on Allen's claims that it violated Title VII of
the Civil Rights Act of 1964 by forcing her to work in a hostile
environment and constructively discharging her and that it is liable
for the state tort offenses of outrage, invasion of privacy, negligent
supervision and retention, assault and battery, and sexual harassment.
Wood seeks summary judgment on Allen's claims that he is liable for the
state tort offenses of outrage, invasion of privacy, assault and
battery, and sexual harassment.  Tyson has also filed a motion to
strike certain evidentiary material submitted  by Allen filed in
opposition to summary judgment.  For the reasons hereinafter stated,
the motion to strike is due to be denied in part and granted in part,
Tyson's motion for summary judgment is due to be denied in part and
granted in part, and Wood's motion for summary judgment is due to be
granted.

## Background

Allen worked at Tyson's Blountsville facility twice.  Her first term of employment began on September 28, 1987 and ended on June 28, 1988 when Allen failed to report to work for two consecutive days.[1] Tyson again hired Allen to work at its Blountsville facility on September 22, 1989.  While at Tyson, Allen received one promotion and one demotion.  Allen's demotion occurred in March of 1994 and resulted in her being assigned to work in the Rehang/Trim Department ("Rehang") under the supervision of Trivis Wood, Production Supervisor.  Wood had been hired by Tyson in 1970 as an hourly employee and had moved up through the ranks to become supervisor.[2]  At all times relevant to this action, Wood held the position of Production Supervisor over the Rehang Department.

During her employment, Allen's record shows a high absentee rate. In 1994, for example, Allen left early eight times, was late to work six times, and missed work entirely forty (40) times.[3]  By November 15, 1994, Allen's attendance had deteriorated to the point where she had only two attendance points remaining under the "Attendance Awards Program" that was then in effect at Tyson's Blountsville facility. [4]

---

[1] Tyson considers a failure to report to work for two consecutive days a voluntary self-termination.

[2] At Tyson, the position of supervisor is the lowest ranking managerial level.

[3] Some of these absences may have been excused.

[4] Under the Attendance Awards Policy, employees were assigned sixty (60) points.  Employees with perfect attendance for all scheduled hours in 28 calendar days received ten points for each consecutive month of perfect attendance.  Points were taken away for leaving work early, reporting to work late, or missing work entirely.  When an employee's points reached thirty (30) or less, the employee received a verbal notification of excessive absences.

2

Consistent with the terms of this policy, Allen was given the option to take a one day, unpaid "Decision Making Leave" ("DML") to provide her an opportunity to evaluate her commitment to her job. Allen took this one day leave.

When Allen returned to work on November 16, she handed Wood a type-written letter stating that she would contact the personnel department if he did not stop sexually harassing her. Wood read a portion of the type-written letter and handed it back to Allen. Wood immediately reported Allen's complaint to his superintendent, James Williams ("Williams"). Williams sought to inform Gail Malone ("Malone"), Tyson's Personnel Manager of the allegations against Wood. Upon learning that Malone was out of the office on November 16, Williams informed Tony Holloway ("Holloway"), Personnel Assistant. When Holloway conveyed the information to Malone on November 17, she immediately began an investigation.

As part of this investigation, Malone interviewed Allen on November 18. Allen stated that Wood had given her five notes since she began working in Rehang, the last of which she had received one or two months earlier. Allen also told Malone that Wood had made sexually suggestive comments to her.[5] During the interview, Malone discovered

---

Twenty (20) points or less warranted an Attendance Notification which is signed by the employee and his or her supervisor, and is placed in the employee's personnel file. If an employee's points fall to ten (10) or below, the employee's supervisor will notify the employee that he or she has the option of taking a Decision Making Leave ("DML"). The DML presents an option for the employee to take a one day unpaid leave and evaluate his or her commitment to working at Tyson. The employee is not obligated to take the leave. Absent extenuating circumstances, an employee will be terminated when his or her points reach zero.

[5] Allen later testified in deposition that Wood "rubbed [his] front up against [her] butt," but could not say whether the contact was intended or accidental. It does not appear that she disclosed this allegation to Malone.

3

that Allen had not reported the notes from Wood or his comments to the Plant Nurse, the Plant Manager, Personnel, or any other supervisor, as required by Tyson's anti-harassment policy. Allen could not or would not disclose the names of anyone who had seen the notes, nor did she name any witnesses to Wood's conduct. Allen stated that she had destroyed the notes and her type-written letter.

Malone also interviewed Wood on November 18 and informed him of the acts of which he had been accused. Wood flatly denied Allen's allegations.

In an effort to substantiate Allen's complaints, Malone spoke with several employees who might have knowledge of the situation. She was unable to find any corroboration for Allen's allegations. On November 21, Malone met with Wood and informed him that she found no evidence to support Allen's statements. Although Allen's complaints had not been substantiated, Malone conveyed to Wood the seriousness of the allegations against him. Malone also reminded Wood that, under Tyson's anti-harassment policy, if the complaints were well founded or if future allegations were made, he would be subject to discipline up to and including discharge. Malone required Wood to reread Tyson's Sexual Harassment Policy and sign Tyson's Management Standards of Behavior Acknowledgment Form indicating that he acknowledged and understood his responsibilities as a member of management. Malone also ordered Wood to stay away from Allen.

In addition to meeting with Wood, Malone also met with Allen on November 21. Malone informed Allen that no evidence of harassment, apart from her statement, could be found and that Wood denied her allegations. Notwithstanding Malone's inability to corroborate Allen's story, Malone offered to transfer Allen to another department where she

4

would not be forced to work with Wood. Allen requested to be transferred to "Pack-Out," but was informed that there were no openings in that department. Allen then asked to be transferred to the Leg Quarters Department, where she would work under the direct supervision of Doris Smith ("D. Smith"). This transfer request was granted. At the conclusion of the meeting, Malone counseled Allen on her rights and responsibilities under Tyson's harassment policy and specifically instructed Allen to report to her if Wood caused additional problems.

While in the Leg Quarters Department, Allen usually worked under D. Smith's supervision. Occasionally, however, Allen was assigned to "help out" in Rehang and was sent to work in Wood's department. According to Allen, during the roughly seven weeks that she worked in Leg Quarters, she was sent to Rehang about three times. Allen was asked to "help out" a fourth time, but she refused to go. Allen contends that she complained to D. Smith about the temporary assignments to Rehang, but Smith told Allen that she was chosen to "help out" because they needed experienced people to send over. D. Smith maintains that Allen never complained to her about her decisions to occasionally re-assign Allen to Rehang. The parties agree that Malone was unaware that Allen was being re-assigned.

On occasions that Allen was sent to work in Rehang, she had no interaction with Wood. Wood did not give Allen any notes, never spoke to her, never touched her. Wood did, however, walk around and observe the employees working in his department. Wood contends that he always supervised the department in this manner, but Allen claims that he walked back and forth in an effort to intimidate her. Allen did not inform D. Smith, Malone, or anyone else that she felt Wood was attempting to intimidate her.

5

Allen worked in Leg Quarters for approximately one and a half months after making her complaint about Wood. While in Leg Quarters, Allen's attendance points fell so low that on December 20, 1994, she was again counseled and given the opportunity to take a one day, unpaid Decision Making Leave. Allen elected to take the one day leave. Allen received attendance counseling again within the next week, and took another DML on December 28, 1994. On January 10, 1995 and January 11, 1995, Allen failed to report to work and did not call in to explain her absence. Tyson considers a failure to report to work for two consecutive days a voluntary quit. Consequently, Allen's employment with Tyson was officially terminated on January 12, 1995.

Allen filed a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC") on April 11, 1995. After receiving notice from the EEOC of her right to sue, Allen filed a complaint alleging violations of both federal and state law. Against Tyson, Allen asserted claims under Title VII of the Civil Rights Act of 1964 (sexual harassment via hostile environment and constructive discharge), the Equal Protection Clause of the Fourteenth Amendment, and state law claims of outrage,[6] invasion of privacy, assault and battery, sexual harassment, and negligent supervision and retention. Against Wood, Allen alleged violation Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment, and state law claims of outrage, invasion of privacy, assault and battery, and sexual harassment.

---

[6] Neither Allen's original complaint nor her subsequent amended complaint contains a claim based on the tort of outrage. All parties, and earlier opinions entered in this case presume the existence of such a claim. There being no prejudice to either defendant, this court will similarly presume the existence of such a claim.

Both defendants filed motions for summary judgment, and Allen
voluntarily withdrew her Equal Protection claims against both Wood and
Tyson, as well as her Title VII claim against Wood. On April 24, 1996,
the Honorable Robert B. Propst   granted defendants' motions and
dismissed, with prejudice, all federal claims asserted against both
defendants.[7]  Allen appealed to the Eleventh Circuit Court of Appeals,
which reversed and remanded. On remand, the case was reassigned to the
undersigned.   The case was then stayed pending the United States
Supreme Court's resolution of *Faragher v. Boca Raton,* 111 F.3d 1530
(11th Cir. 1997). In September of 1998, this court lifted the stay and
the parties were allowed to file renewed motions for summary judgment.
Both defendants filed such motions. Although the motions officially
came under submission in November of 1998, the court waited until the
Honorable U.W. Clemon denied Allen's motion to consolidate the instant
case with *Dumas v. Tyson Foods, Inc.,* 93-C-2688-W on March 9, 1999 to
rule on the Rule 56 motions that would have been Judge Clemon's if he
had consolidated the cases. The parties continued to submit material
as late as March 31. 1999. The court now concludes that Tyson's motion
to strike is due to be denied in part and granted in part, Tyson's
motion for summary judgment is due to be denied in part and granted in
part, and Wood's motion for summary judgment is due to be granted.

## Tyson's Motion to Strike

In order to survive summary dismissal of her claim that Tyson is
directly liable for violations of Title VII and her claim of negligent
supervision, Allen must create a genuine issue of fact that Tyson

---

[7] All state claims against each defendant were dismissed without
prejudice.

7

should have known of the existence of sexual harassment and did nothing. In order to survive summary judgment on her claim that Tyson is vicariously liable under Title VII for the acts of Wood, she must create a genuine issue of fact regarding the reasonableness of her failure to report the harassment. In support of her argument, Allen offers evidence of other employees complaining of sexually harassing behavior. Some of this evidence involves allegations that Wood harassed former Tyson employees prior to, and contemporaneous with, the time period in which he allegedly harassed Allen. Specifically, Allen submits evidence that both Wendy Smith ("W. Smith") and Paulette Stutts ("Stutts") were harassed by Wood. Other allegations involve claims made by Tyson employees that other employees and supervisors (other than Wood) sexually harassed them, as well as claims that management either retaliated against the reporting employee or took no action to correct the harassment. The events described occurred up to a year and a half to three years after Allen had left Tyson's employment.

Tyson has moved to strike such evidence on the grounds that it is irrelevant as the alleged victims do not include Allen, that W. Smith's and Stutts's claims of harassment were unknown by Tyson and therefore cannot provide a basis for imputing constructive knowledge to Tyson, and that reports of harassment occurring years after Allen left Tyson are too remote in time to be probative. The court only partially agrees.

Evidence indicating that Wood's harassment of other female employees was well-known suggests that Tyson should have been put on notice that it had a problem employee. W. Smith testified that everyone in her department knew of Wood's behavior towards her. Stutts testified that James Edwards, a supervisor, knew that Wood had passed

8

Stutts two explicit notes.[8]  Insofar as Tyson's motion to strike seeks to exclude evidence of W. Smith's and Stutts's reports of sexual harassment, the motion is due to be denied.

With regard to reports of sexual harassment and retaliation that occurred years after Allen left Tyson's employment, the court acknowledges that such reports should not be excluded simply because they occurred after Allen's departure.  These reported instances, however, are simply too remote in time to be sufficiently probative on the issue of Tyson's constructive knowledge, and too remote in time to be sufficiently probative as to whether Allen reasonably failed to report Wood's alleged harassment.  Whatever probative value such evidence may have is vastly outweighed by the potential for undue prejudice against Tyson.  To the extent that Tyson's motion to strike seeks to exclude the affidavits of Michael Speegle, Caryl Messer, Dorothy Beasley, LaShan Lee, Wanda Walden, Marth Vanzandt, Andre Jones, Rose Taylor, Robin Taylor-Scott , and Jarvis McGee, the motion is due to be granted.

**Wood's Motion for Summary Judgment**

Allen asserts several state law claims against Wood.  Wood seeks judgment as a matter of law on all of these claims, including Allen's claim of outrage, invasion of privacy, assault and battery, and sexual harassment.

As noted earlier, neither Allen's original complaint nor her complaint as last amended contains a claim for outrage, but all parties, as well as earlier opinions entered in this case, presume the

---

[8] Stutts was romantically involved with Edwards at the time.

existence of such a claim.  This court similarly presumes the existence of such a claim, but concludes that the conduct of which Allen complains simply does not rise to the level required to sustain a claim for outrage.  *See American Road Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1981) (outrage requires conduct which is beyond all possible bounds decency, atrocious, and utterly intolerable in a civilized society).

Similarly, presenting Allen with several explicit notes, making a sexual comment, propositioning Allen, and causing contact with Allen's buttocks simply does not constitute an invasion of privacy, as defined by Alabama state courts.  *See, e.g., Ex parte Atmore Community Hosp.*, 719 So.2d 1190 (Ala. 1998); *McIssac v. WZEW-FM Corp.*, 495 So.2d 649 (Ala. 1986).  To succeed on a claim alleging an invasion of privacy relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation.  *Atmore*, 719 So.2d at 1194 (citing *Busby v. Truswal Systems Corp*. 551 So.2d 322, 323 (Ala. 1989)).  Recovery for an invasion of privacy in Alabama requires more than being propositioned, or being the recipient of lewd comments.  A plaintiff must also present additional evidence, such as evidence that the offending conduct including offensive contact or the alleged harasser looking up her skirt or down her blouse.  *See id.; McIssac,* 495 So.2d at 651.  Allen simply has not produced sufficient evidence to sustain her invasion of privacy claim, and Tyson is entitled to judgment as a matter of law.

Tyson is also entitled to judgment as a matter of law on Allen's

claim for assault and battery.  To succeed on such a claim, Allen must show that (1) Wood touched her; (2) he intended to touch her; and (3) the touching was conducted in a harmful or offensive matter. *Atmore,* 719 So.2d at 1193 (citing *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala. 1986)).  While Allen does describe an instance in which Wood's groin area contacted her buttocks as he walked behind her through a narrow area, Allen readily admits that she cannot say the touching was intentional.  Allen has failed to create a genuine issue of material fact sufficient to allow her assault and battery claim to proceed.

Allen's amended complaint contains a claim for sexual harassment under state law.  In subsequent filings with this court, Wood and Tyson have each questioned the existence of such a claim under Alabama state law.  Allen cites neither caselaw nor statute to support her claim that Alabama recognizes a claim for sexual harassment as a tort for which she could receive separate recovery.  This court's own research reveals that claims relating to sexual harassment are typically presented as claims for outrage, invasion of privacy, or assault and battery.  No case has been found in which a court explicitly recognizes the existence of a distinct tort for sexual harassment.  Because it appears that no such tort exists, Wood is entitled to judgment as a matter of law on Allen's claim for sexual harassment.

Wood is entitled to judgment as a matter of law on all claims asserted against him by Allen. An appropriate order granting Wood's motion for summary judgment and dismissing all claims against him will therefore be separately entered.

**Tyson's Motion for Summary Judgment**

A. *Title VII Claim*

In her complaint, Allen claims that Wood gave sexually explicit notes to her despite her protest,[9] propositioned her while his wife was out of town, made another sex based comment to her, and rubbed up against her as he walked behind her through a narrow area. Allen avers that this conduct constitutes sexual harassment, and further claims that Wood's alleged harassment created a hostile environment in which she was forced to work.

The court concludes that Tyson is entitled to summary judgment on Allen's hostile environment claim. She attempts to bolster this claim by introducing evidence of lewd behavior on the part of other Tyson employees, some of them supervisors. Allen's deposition testimony makes clear, however, that Tyson was unaware of this behavior while she worked at Tyson. She clearly testified that no Tyson employee, apart from Wood, ever said anything to her that offended her, touched her in an offensive way, or otherwise harassed her. *See* Depo. of Pl. at 13-18. She further testified that she never heard any other supervisor or employee make a comment about sex. *Id.* at 19-21. Allen did testify that she had heard a rumor about people having sex at the plant, but she never saw any such thing nor knew of the employees allegedly involved. *Id.* at 21-22. Allen clearly states that her hostile environment claim is based <u>only</u> on the conduct of Wood. *Id.* at 15. Having herself narrowed the basis of her hostile claim to several explicit notes, two comments, and a "touching" that Allen admits could

---

[9] Allen testified that she told Wood to stop passing her notes after she received a fourth note, but that he passed her a fifth note against her wishes.

have been innocent, it is clear that Wood's conduct simply did not
create an atmosphere so permeated by vulgarity, lewdness, and
inappropriate behavior that it rises to an actionable level.  Tyson is
therefore entitled to judgment as a matter of law on Allen's Title VII
claim, insofar as her claim is based on a hostile environment.  What
Allen describes was not "pervasive" or "severe" as these words are used
in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), 114 S.Ct.
367, 371.  Neither was the conduct complained of so objectively
offensive as to unreasonably interfere with Allen's job performance.

With regard to the claim of sexual harassment, as distinct from
hostile environment, the court concludes that the conduct of which
Allen complains is sufficient to state an actionable claim for sexual
harassment.  In order to survive Tyson's motion for summary judgment
however, Allen must demonstrate a genuine issue as to whether Tyson
should be held accountable for Wood's conduct.  Allen argues that Tyson
is both directly and vicariously liable for Wood's alleged
harassment.[10]  The court concludes that Allen has demonstrated that
Tyson is not entitled to judgment as a matter of law under either
theory of liability.


1. <u>Direct Liability</u>

The Eleventh Circuit has recently explained direct and vicarious
liability in Title VII cases.  *See   Dees v. Johnson Controls World*

---

[10] Though Allen presents arguments based on direct and vicarious
liability, most of Tyson's brief focuses on whether Tyson should be held
vicariously liable for the alleged behavior of Wood.  This is somewhat
understandable, since an order of this court stayed litigation pending the
outcomes of *Burlington Industries* and *Faragher*, the Supreme Court cases that
established the affirmative defense discussed later in this memorandum
opinion.

*Servs., Inc.*, 168 F.3d 417, 421-22 (11th Cir. 1999).  In explaining direct liability, the Court stated that an employer can be held directly liable for a supervisor's harassment when the employer either intended, or negligently permitted, the tortious conduct to occur.  *Id.* The harassment can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action.  *Id.*

In this case, Allen has presented evidence indicating that two employees, W. Smith and Stutts, were harassed by Wood prior to Allen's complaint.  Though Tyson points out, and Allen does not dispute, that neither W. Smith nor Stutts reported the harassment, W. Smith's deposition testimony indicated that everyone in her department knew of Wood's behavior towards her.  W. Smith further testified that, although she did not note Wood's behavior as a basis for her decision on her exit interview form, that she verbally cited Wood's behavior as a reason for her decision to leave.  All parties agree that Tyson did nothing to stop the alleged harassment of W. Smith.[11]  Evidence that an entire department knew of the harassment conflicts with Tyson's claim that it had no knowledge of the situation and creates a genuine issue as to whether Tyson should have known of Wood's behavior.

As for Stutts, Allen submits Stutts's deposition testimony indicating that James Woods, a supervisor, was aware that Wood had written Stutts a sexually explicit note.  The position of supervisor may be the lowest ranking management level position at Tyson, but it is still a management position.  Woods's knowledge of the alleged harassment is therefore rightfully imputed to Tyson.  The possibility

---

[11] Tyson, of course, maintains that it did not stop the harassment because it did not know of the harassment.

that Tyson should have known of Wood's harassment of Smith, and did know of Wood's harassment of Stutts, is sufficient to create a genuine issue as to whether Tyson knew or should have known of Wood's alleged harassment of Allen.  Tyson is therefore not entitled to judgment as a matter of law on Allen's claim that Tyson is directly liable for Wood's actions.

2.  Vicarious Liability

Allen also claims that Tyson is vicariously liable for the acts of Wood because his position as supervisor enabled him to harass her. As the Eleventh Circuit has recently explained, an employer can be held vicariously liable for a supervisor's sexual harassment when the supervisor is aided in committing the harassment by the existence of his agency relationship with the employer.  *Dees,* 168 F.3d at 421-22 (citing *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998)).  An employer cannot escape vicariously liability when a supervisor's harassment results in a "tangible employment action" taken against a victimized employee.  *Id.* (citations omitted).  When no such tangible employment action occurs, however, the employer's vicarious liability is subject to a two-part affirmative defense: the employer can escape liability by demonstrating (a) that it took reasonable steps to prevent sexual harassment <u>and</u> to remedy the sexually harassing conduct promptly once it was brought to the employer's attention, <u>and</u> (b) that the victimized employee unreasonably failed to avoid harm or utilize any remedial opportunities made available by the employer.  *Id.* (citations omitted).

Notwithstanding Allen's assertions to the contrary, the

15

affirmative defense established in *Burlington Industries* and *Faragher* is available to Tyson because no tangible employment action was taken against her.   Allen contends that she suffered tangible employment action because Tyson retaliated against her by forcing her to take one day off after she complained about Wood's behavior.   The evidence shows, however, that she was not forced to take a day, she was given the option.   This procedure is consistent with company policy for dealing with excessive absenteeism.   The evidence shows that Allen had exceeded her prescribed number of absences and merited the letter in her file.   Moreover, the evidence clearly shows that the sequence of events was that Allen took the day off, then made the complaint about Wood.   There was no retaliation.

Allen also contends that she suffered tangible employment action because she was constructively discharged.   The court rejects this contention because there was no constructive discharge.   It is undisputed that Allen did not tell a soul about Wood's alleged attempts to intimidate her.   Because the standard for constructive discharge involves a determination of behavior which a reasonable person could not be expected to endure, there is a requirement that employee claiming constructive discharge have acted reasonably in abandoning his or her employment.   Many courts, including this one, have concluded that acting reasonably includes an obligation on the part of the employee to provide the employer notice of the offending behavior and an opportunity to correct it before the employee abandons employment. *See, e.g., Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1997), *reh'g denied; Garner v. Wal-mart Stores, Inc.*, 807 F.2d 1536, 1538 (11th Cir. 1997); *Edwards v. Cosby,* CV-94-AR-143-M, Mem. Op. at 11-12.   Where the employee has not provided the employer

with this opportunity, there is no constructive discharge. *Edwards*, CV-94-AR-143-M, at 11. Furthermore, the conditions under which Allen left her employment were not so intolerable as to expect a reasonable person to abandon employment. Allegedly walking back and forth and standing behind someone simply does not rise to the level of behavior that would support a claim of constructive discharge.

Having produced evidence indicating that Allen suffered no tangible employment action, Tyson must next demonstrate that it (1) acted to prevent and promptly correct any sexual harassment AND (2) that Allen unreasonably failed to take advantage of preventative and corrective measures provided by Tyson. Allen's failure to report the obscene notes Wood gave her until after she had received the final note, failure to report the sexually explicit comments, failure to report the alleged "bumping" incident, and failure to report Wood's alleged attempts to intimidate her after she had filed her complaint ensure that Tyson can satisfy the second prong of the affirmative defense.

A significant question remains, however, as to whether Tyson can satisfy the first prong of the defense. Much of the same evidence that creates a question as to whether Tyson should be held directly liable for the harassment also creates a question as to whether Tyson can show that it acted promptly and reasonably to prevent and to correct sexual harassment. The Eleventh Circuit recently acknowledged the overlap between the two standards of liability, noting that "the employer's notice of the harassment is of paramount importance" with respect to both the direct liability standard and the employer's affirmative defense to vicarious liability. *Dees*, 168 F.3d at 422. Under either standard, if the employer had notice of the harassment, then it is

17

liable unless it took prompt corrective action.  *Id*.

In this case it is clear that Tyson took prompt corrective action as soon as Allen complained of Wood's behavior.  Tyson commenced an investigation immediately upon learning of Allen's complaint.  The evidence shows that, despite the fact that no evidence supporting Allen's claims was discovered, Gail Malone not only counseled Wood on the seriousness of the allegations but transferred Allen to a different department.  Allen complains that Tyson did not effectively correct the situation because it placed her in a department in which she occasionally had to help-out in Rehang and was forced to encounter Wood on those occasions.  The evidence is undisputed, however, that Allen did not inform Doris Smith or Malone that Wood continued to harass her.

While the undisputed evidence shows that Tyson acted to promptly correct Wood's alleged harassment of Allen, it is unclear whether Tyson acted reasonably to prevent sexual harassment from occurring.  Tyson points to its elaborate policies regarding sexual harassment and the training provided to its managers.  While it may be true that Tyson effectively communicates its policies regarding sexual harassment to its managerial employees, the evidence also indicates that Tyson's managerial employees do not communicate the same concern to non-managerial employees. Wood testified that he never specifically talked to his employees about sexual harassment, fearing somehow that saying the words "sexual harassment" would encourage that type of behavior.  Wood also testified that he did not post any policies concerning sexual harassment.  Furthermore, as noted above, Tyson did know that Wood passed Stutts notes, and perhaps should have known that Wood was harassing W. Smith.  Had Tyson acted promptly to correct Wood's

18

harassment of these two women, it may have prevented Wood's harassment of Allen.    Allen has therefore demonstrated a genuine issue as to whether Tyson acted reasonably in preventing sexual harassment.

Because there are genuine issues as to whether Tyson can make the necessary showing to satisfy the affirmative defense outlined in *Faragher* and *Burlington Industries*, Tyson is not entitled to judgment as a matter of law on Allen's claim that it is vicariously liable for the acts of Wood.

B.    *State Law Claims*

Tyson also seeks summary judgment on Allen's state law claims that it is vicariously liable for Wood's alleged offenses of outrage, invasion of privacy, assault and battery, and sexual harassment, and directly liable for the state law offenses of constructive discharge and negligent supervision and retention.    The conclusion, however, expressed earlier in this opinion, that Allen has failed to create genuine issues of material fact on her state law claims against Wood, obviates any discussion on her assertion that Tyson is vicariously liable for Wood's offenses.    Discussion of Allen's claim for constructive discharge is also unnecessary, since this court has earlier rejected this claim in its consideration of whether Allen suffered tangible employment action.    Tyson is entitled to judgment as a matter of law on all of these claims.

Only Allen's claim for negligent supervision and retention remains to be decided.    Like the disposition of the constructive discharge claim was influenced by the court's findings regarding tangible employment action, so the disposition of the negligent

19

supervision and retention claim is influenced by the court's conclusion that a genuine issue exists as to Tyson's actual and constructive knowledge of Wood's harassment. To avoid summary judgment on her only remaining state law claim, Allen must show that had Tyson exercised due and proper diligence, it would have learned of Wood's behavior, either because the behavior was brought to the attention of Tyson, or because Wood's behavior was of such a nature, character, and occurred so frequently that Tyson, in the exercise of due care, must have had notice of it. *See Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala. 1995) (citing *Big B., Inc. v. Cottingham*, 634 So.2d 999, 1003 (Ala. 1993)). Allen must further establish a causal connection between Tyson's breach of the duty to reasonably supervise and her alleged injuries. *See Mills v. Wex-Tex Indus., Inc.* 991 F. Supp. 1370, 1389 (M.D. Ala. 1997).

Allen has produced barely sufficient evidence to avoid summary judgment on the negligent supervision and retention claim. The fact that James Woods, a supervisor at Tyson, knew that Wood was harassing Stutts, creates a legitimately triable issue as to Tyson's actual knowledge of Wood's behavior. Evidence that Wendy Smith's whole department was aware of Wood's behavior is sufficient to suggest that Wood's conduct was of such a nature that Tyson should have discovered it in the exercise of due care. The causal connection between the alleged negligent supervision and Allen's injuries is obvious: if Tyson had properly supervised and acted to correct Wood's earlier harassment of other employees, Allen may have avoided her injury entirely.

An appropriate order denying in part and granting in part Tyson's

motion to strike, granting Wood's motion for summary judgment, and denying in part and granting in part Tyson's motion for summary judgment will be separately entered.

DONE this _____ day of August, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

21